UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| SARAH HARDY, on her own behalf and on behalf of others similarly situated, | * * * | |
| Plaintiff, | * * | |
| v. | * * | CIVIL ACTION NO. |
| UNIVERSITY OF MAINE SYSTEM | * * | |
| and | * * | |
| DANIEL P. MALLOY, in his official capacity as Chancellor of the University of Maine System, | * * * | |
| Defendants. | * * | |

COMPLAINT
JURY TRIAL DEMANDED
INJUNCTIVE RELIEF REQUESTED

NOW COMES Plaintiff Dr. Sarah Hardy ("Plaintiff" or "Dr. Hardy"), by and through the undersigned counsel, and complains against Defendant University of Maine System and Daniel P. Malloy, in his official capacity as Chancellor of the University of Maine System ("Defendants"), as follows:

JURISDICTION AND PARTIES

1.      This action for age discrimination arises under the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §§ 621 *et seq.* and the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551, *et seq.*

1

2.      Dr. Hardy is a United States citizen residing in the Town of Farmington, County of Franklin, State of Maine.

3.      Defendant University of Maine System ("Defendant UMS" or "UMS"), is a Maine entity with operations throughout the state of Maine.

4.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. Declarative and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

5.      This Court has subject matter jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367 and the Defendants' express consent to the Court's jurisdiction over the state law claims for purposes of this case.

6.      Defendant Daniel P. Malloy ("Defendant Malloy" or "Malloy"), who is sued in his official capacity only, is the Chancellor for the University of Maine System.

7.      As Chancellor, Malloy is the Chief Executive for the University of Maine System and also sits on the University of Maine System Board of Trustees.

8.      As Chancellor, Malloy administers the University of Maine System, is responsible for the University of Maine System's academic and administrative leadership and is also responsible for representing the University of Maine System to the Governor, State Legislature and the people of Maine.

9.      Malloy is the appropriate named individual for purposes of Plaintiff's claims for declarative and injunctive relief at the University of Maine System with respect to federally protected rights.

10.    As Chancellor, Malloy is the appropriate individual for executing any Court ordered declarative and injunctive relief at the University of Maine System with respect to the federally protected rights at issue in this case.

11.    At all material times, Defendant UMS was Dr. Hardy's "employer" as that term is defined in the ADEA and MHRA.

12.    On or about June 27, 2023, Dr. Hardy filed a timely Charge/Complaint of Discrimination with the Maine Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC").

13.    On or about November 15, 2024, Dr. Hardy received a "right to sue" letter from the MHRC.

14.    On or about December 5, 2024, Dr. Hardy received a "right to sue" letter from the EEOC.

15.    Dr. Hardy has exhausted all administrative remedies for the purposes of the claims set forth in this Complaint.

<u>STATEMENT OF FACTS</u>

16.    Defendant UMS is a public university system for the State of Maine.

17.    Beginning in 2001, Dr. Hardy was employed as a professor of Mathematics at the University of Maine, Farmington ("UMF") campus. Dr. Hardy worked as a professor until May 2011, when she transitioned to UMF's Director of Institutional Research from June 2011 to July 2013. Dr. Hardy returned to the Department of Mathematics as a professor from September 2013 until August 2022.

18.    Dr. Hardy performed her position well. She was well respected by students, staff, and faculty.

**The UMS Special Retirement Incentive**

19.    On March 29, 2022, UMS offered qualified faculty members a Special Retirement Incentive ("SRI") to retire.

20.    Faculty members who enrolled in the SRI program by April 15, 2022, would receive an incentive equivalent to a year of their final base salary upon retiring.

21.    Based on her final base salary, Dr. Hardy would receive an additional $80,783.84 for the SRI incentive.

22.    An initial portion of the incentive was to be contributed to the employee's 403(b) retirement plan in 2022, up to the maximum allowable annual contribution permitted by the IRS, with the remainder to be contributed to the employee's plan in 2023.

23.    Faculty members who accepted the SRI by April 15, 2022 would retire on September 1, 2022.

24.    The SRI was limited to employees who were age sixty-two (62) or older with at least ten (10) years of service or age sixty (60) or older with at least twenty (20) years of service.

25.    At the time UMS offered the SRI, Dr. Hardy was sixty-four years old. She was born in 1957.

26.    The SRI program was administered by the UMS Office of Human Resources ("HR").

27.    Dr. Hardy timely accepted the SRI.

28.    Seven other faculty members at UMF accepted the SRI. Two of the faculty members who accepted the SRI, but not Dr. Hardy, were asked to defer their retirement, one for the academic year and one for the fall semester. Those two UMF faculty members continued to receive their base pay, plus the SRI bonus at the conclusion of their contract the following year.

29.     Upon information and belief, faculty members at the other five UMS campuses also accepted the SRI and were asked to defer their retirements. Those campuses are the University of Maine, the University of Southern Maine, the University of Maine at Augusta, the University of Maine at Presque Isle, and the University of Maine at Fort Kent.

**UMF Posts Interim Provost Position and Offers Position to Dr. Hardy**

30.     On July 26, 2022, UMF posted a position for Interim Provost, open only to current UMF faculty and administrators.

31.     The Interim Provost position was posted for a two-year appointment.

32.     Dr. Hardy understood that because UMF was already two months into its fiscal year, the first-year salary would be prorated.

33.     On August 5, 2022, Dr. Hardy notified Interim UMF President Joseph McDonnell that she was interested in the position.

34.     On August 7, 2022, Dr. Hardy submitted her application for the position.

35.     UMF scheduled an interview for Dr. Hardy for August 16, 2022, but later rescheduled the interview for August 25, 2022.

36.     Dr. Hardy had an interview with Interim President McDonnell on August 19, 2022 and with Interim President McDonnell and the search committee on August 25, 2022.

37.     The search committee consisted of three UMF administrators and three faculty members.

38.     At the time of Dr. Hardy's application and subsequent interview, Interim President McDonnell, the search committee, and Human Resources were all aware that Dr. Hardy had accepted the SRI and was set to retire on September 1, 2022.

39.     The search committee did not ever mention that accepting the SRI rendered Dr. Hardy ineligible for the Interim Provost position that had been posted.

40.     Following the interviews, on August 31, 2022, at a 9:00 AM meeting, Interim President McDonnell verbally offered and Dr. Hardy accepted the Interim Provost position.

41.     The terms of the offer were slightly different from the posting. Although the posting was for a two-year position, UMS extended an offer for a one-year position with an annual salary of $124,000 per year, with an option to continue for a second year upon mutual agreement. The offered salary was prorated to $103,333 for ten months' work because UMF was already two months into its fiscal year.

42.     President McDonnell told Dr. Hardy that he was requesting that HR staff create the contract that day, and he expected that she would receive the contract by that afternoon.

43.     During the following week, President McDonnell included Dr. Hardy on multiple emails he sent to his immediate staff.

44.     Following her acceptance on August 31, 2022, Dr. Hardy began working in the interim Provost position, including by reviewing program curricular plans.

45.     Although President McDonnell said on August 31, 2022, that HR would get the contract to Dr. Hardy later that afternoon, the contract was not delivered that day.

46.     At 5:12 PM on August 31, 2022, President McDonnell emailed Dr. Hardy to say he was working with HR to move her appointment through the process and requested patience.

47.     Dr. Hardy's retirement as a professor became effective on September 1, 2022, as stipulated in the SRI program.

48.    At 10:13 AM on September 1, 2022, President McDonell emailed that within a few hours Dr. Hardy would get an appointment letter requiring her signature, and he sent Dr. Hardy a draft public announcement of her appointment to the position.

49.    Later on September 1, 2022, at 1:58 PM, Amie Parker, UMS Director of Equal Opportunity and Interim UMF Director of Human Resources, emailed Dr. Hardy to advise that if she accepted the Interim Provost position, she would have to forfeit the SRI.

50.    Dr. Hardy had understood the SRI incentive would be deferred and provided at the end of the upcoming academic year, as it had been for the other two UMF faculty members who deferred their retirements.

51.    Dr. Hardy immediately contacted Interim President McDonnell, and advised this was contrary to her understanding that her SRI would be rolled forward and paid the following year as was being done with the other faculty members who stayed on in faculty positions.

52.    President McDonnell responded that he was trying to contact HR to resolve the issue.

53.    At the end of the day on September 1, 2022, President McDonnell informed Dr. Hardy by email that the issue would require another day to resolve and scheduled a meeting with Dr. Hardy for the following day, September 2, 2022, at 11:00 AM.

54.    President McDonnell subsequently cancelled the meeting stating that he was talking with UMS higher-ups to see what options were available regarding the SRI.

55.    Later on September 2, 2022, President McDonnell emailed Dr. Hardy to advise her that the issue could not be resolved until after the Labor Day weekend when the UMS HR staff and lawyers would determine the options available regarding Dr. Hardy's retirement and SRI enrollment.

56.    President McDonnell and HR knew of Dr. Hardy's impending retirement and SRI enrollment the weeks before and following the interview but never alerted Dr. Hardy to potential issues.

57.    On September 2, 2022, Vanria DeMay, UMS's Director of Labor and Employee Relations, emailed Jim McClymer and Lydia Savage, President and Vice-President of the Associated Faculties of the University of Maine (AFUM), the union representing Dr. Hardy with respect to the SRI.

58.    The email declared, "If Sarah Hardy accepts the offer, the campus/the UMS will offer a 10-month academic year appointment, with the option of a 1-year extension and she will still receive the SRI, it would just be deferred one year."

59.    The email was consistent with how UMS was treating the other two UMF faculty members who opted to accept the SRI but were asked to continue working, in contrast to UMF HR Director Parker's September 1, 2022 email to Dr. Hardy.

60.    After Labor Day weekend, President McDonnell emailed Dr. Hardy on September 8, 2022, to inform her that her eligibility for the SRI was now being considered at the "system level": "The issue of the SRI is completely out of my hands and is being addressed at the system level. Unfortunately, the key people are in Presque lsle for a campus visit, so I do not know if they have time to focus on this matter." The "key people" McDonnell referred to were the UMS Chancellor Daniel Malloy and his immediate staff who had gone to Presque lsle for a meeting.

61.    The next day, September 9, 2022, President McDonnell informed Dr. Hardy that she should wait to perform work as the Interim Provost. At that point, Dr. Hardy had spent days preparing to assume the role.

62.     On September 12, 2022, Dr. Hardy emailed President McDonnell to inform him that she had learned from Jean Doty, the UMF AFUM chapter president, that, on September 2, 2022, the AFUM leadership had been told by Ms. DeMay that Dr. Hardy would receive the SRI, but it would be deferred for a year. This matched Dr. Hardy's original understanding but contradicted the information she had been given by Ms. Parker that if she took the Interim Provost position Dr. Hardy would forfeit the SRI.

**UMS Withdraws Its Offer of Employment Based on No-Rehire Policy and Offers Part-Time Position**

63.     On September 14, 2022, two weeks after UMS's oral offer and Dr. Hardy's acceptance, commencement of work, and after weeks of email exchanges, President McDonnell and Dr. Hardy met.

64.     During the meeting, President McDonnell withdrew the full-time offer with the one-year mutual option.

65.     President McDonnell told Dr. Hardy that HR had instructed him that per UMS policy, employees who retired could not be rehired into full-time regular positions, only part-time regular, part-time temporary, or full-time temporary positions.

66.     This was the first time Dr. Hardy had heard about a prohibition against rehiring retirees to full-time positions. Prior to this meeting, Dr. Hardy thought the only issue delaying the issuance of the contract for the Interim Provost position was the payment of the SRI, which was resolvable by deferral.

67.     The policy in question states:

Retirees cannot be rehired in a full-time regular position anywhere within the University of Maine System. Retirees can be rehired by UMS in a part-time regular, part-time temporary, or full-time temporary position. Depending on your Social Security retirement age, Social Security may impose an earnings limit on

9

such work, which could affect Social Security payments until you reach your full Social Security retirement age, which is based on your year of birth.

68.    Employees are eligible to retire from UMS if they are at least fifty-five (55) years old and have at least ten (10) years of service. UMS Administrative Practice Letter IV-N, effective July 8, 2020, provides:

> Retirement is separation from University of Maine System service at the normal retirement age of 65 or older, or at age 55 or older with at least ten (10) years of continuous regular, full-time equivalent service or with vesting in the University of Maine System Basic Retirement Plan for Classified Employees. Effective July 1, 2010, a separation from service shall be considered retirement only at age 55 or older with at least ten (10) years of continuous regular, full-time equivalent service or with vesting in the University of Maine System Basic Retirement Plan for Classified Employees.

69.    President McDonnell offered Prof. Hardy a three-quarters (3/4) time job for nine-and-a-half (9.5) months (since half of one month had elapsed since the original offer), which would have been worth $73,625, or more than $25,000 less than the offer on August 31, 2022.

70.    When Dr. Hardy responded to President McDonnell and HR staff that the Interim Provost position by definition was a "temporary" position, Interim UMF HR Director Ms. Parker erroneously replied that temporary positions could not exceed six months.

71.    The Interim Provost position is a non-represented position.

72.    The "UMS Handbook for Non-Represented Faculty and Salaried Staff" (page 8, paragraph 3) states "Temporary employment normally will not continue for a period to exceed 12 continuous months."

73.    The Interim Provost position was to be a 10-month appointment, which according to the definition of temporary in the Handbook would be considered "full-time temporary" and thus permissible under the Policy.

74.     As a faculty member Dr. Hardy was a member of the Associated Faculties of the University of Maine (AFUM) bargaining unit, whose collective bargaining agreement did not prohibit temporary positions exceeding six months.

**UMS New Offers to Dr. Hardy**

75.     The next day, September 15, 2022, UMS presented Dr. Hardy with a series of offers.

76.     The first offer was similar to the August 31, 2022, offer regarding pay, but not duration: UMS offered (a) $9,833.33 per month, or $118,000 annually, raising the offer from the prior day; and (b) deferral of the SRI; but (c) did not contain an option for a second year.

77.     Dr. Hardy asked questions about the benefits associated with the offer but did not reject the offer.

78.     Later that same day, at 5:29 p.m., UMS withdrew its offer and made a new offer that was substantially different from the offer Dr. Hardy had agreed to on August 31, 2022, and the offer it had made earlier that day.

79.      UMS's new offer returned to its September 14, 2022, verbal offer to Dr. Hardy: a 9.5-month non-renewable term for three-quarters time, worth $73,925, without an option for a second-year renewal.

80.     The offer clarified that benefits, including vacation would be at only three-quarters of the standard rate.

81.     Dr. Hardy would not be eligible for the employee healthcare plan and would remain on the retiree Medicare Advantage plan at her own expense because the retiree plan could never be restarted if stopped.

82.    The SRI incentive would be deferred until the position ended, although a portion of the SRI incentive ($48,026.75 of the total $80,783,84) had already been deposited to her 403(b) account on September 6, 2022. In an email sent after the last offer had been extended, Ms. Parker had referred to the incentive as having been "pulled . . . back."

83.    Dr. Hardy asked HR where the policy against hiring retired employees full-time was located in UMS's documentation or manuals. She received no response to this question, but finally located it herself in the FAQ portion of the online UMS "Planning for Retirement" guide. The section was last modified on July 18, 2022. Dr. Hardy could not find this policy elsewhere, including in the UMS Board of Trustees Policy Manual or the AFUM contract.

84.    In an email sent to President McDonnell, Ms. Parker, Ms. DeMay, and Loretta Shields, Chief Human Resources Officer, on September 16, 2022, Dr. Hardy pointed out that information in the "Planning for Retirement" FAQ stated, "Retirees can be rehired by UMS in a part-time regular, part-time temporary, or full-time temporary position" and asserted that the Interim Provost position was temporary by definition and could qualify as a full-time temporary position. Ms. Parker replied that a temporary position could not exceed six months. Dr. Hardy asked Ms. Parker where the definition of "temporary employee" as one working a maximum of 6 months" resided in UMS's documentation or manuals. Dr. Hardy received no response.

85.    UMS has previously hired a retired employee for a full-time position. On June 30, 2012, Theodora Kalikow retired as the University of Maine at Farmington president. On July 9, 2012, she was appointed to the position of President of the University of Southern Maine. When Dr. Hardy compared Kalikow's situation to her own during a meeting with Ms. DeMay and Lydia Savage, AFUM Vice President, on September 16, 2022, DeMay said that although she did not have direct knowledge of that situation, UMS would have rehired Kalikow through the

Registry, a subcontracting company for interim university administrative positions. This arrangement would not violate UMS's policy. However, Kalikow's appointment as University of Southern Maine President could not have been through the Registry because, after serving for two years as University of Southern Maine President, she was given a one-year position as UMS's acting Vice Chancellor and President Emerita at the same salary she had received as President. Thus, she worked full-time for a period of three years which is longer than would be expected of a subcontracted administrator. Furthermore, this kind of severance package would never have been awarded to a subcontracted employee.

86.    Dr. Hardy was blindsided by the reduced part-time offer and rejected it.

87.    As restructured, the offered pay would have been less than Dr. Hardy's salary as a faculty member.

88.    When Eric Brown served as Interim Provost in 2017, some five years earlier, he received a salary of $120,000. After Brown was promoted to Provost, he made $138,679 in 2019 and $142,839 in 2020 and 2021.

89.     Although in its offer UMS characterized the salaried Interim Provost position as part-time 30 hours per week, Dr. Hardy estimated, based on conversations with two previous provosts, that to fulfill its responsibilities the position actually would require closer to 60 hours per week.

90.    UMF subsequently agreed to remove some of the position's responsibilities, but not enough to make the position less than full-time.

91.    Dr. Hardy declined the position because of the substantially reduced wages and benefits, which were less than 60% of the original offer (and less than 30% if one includes the second-year option), and because of the full-time job responsibilities for part-time pay.

92.     At the time UMS failed to hire Dr. Hardy for the full-time Provost position due to its policy against rehiring retirees, Dr. Hardy was sixty-five years old.

93.     The matter could have been resolved while Dr. Hardy was still an active employee if the search committee had not delayed her scheduled interview date by nine days (from August 16, 2022, to August 25, 2022) or if the contract had been drawn up on August 31, 2022, as President McDonnell requested.

94.     The salary offered to Dr. Hardy was less than that earned by the former Provost.

95.     The Provost job is now being performed on an interim basis by two individuals (as part of their existing positions), Katherine Yardley, UMF's Dean of Education, and Steve Quackenbush, UMF's Dean of Arts & Science.

**Adverse Impact of UMS's No-Rehire Policy**

96.     UMS's no-rehire policy has had and continues to have an adverse impact on employees and applicants for employment who are aged fifty-five and over.

97.     At the time UMS withdrew its initial offer, Dr. Hardy was a sixty-five-year-old retiree who, due to the policy, was prohibited from accepting a full-time, two-year position and instead was offered less than full-time employment and less pay.

98.     UMS's no-rehire policy has resulted in and continues to result in UMS's refusal to rehire employees who retired from UMS and to deter such employees from applying for rehire by UMS, even in positions other than the position from which the employee retired.

99.     All employees barred from applying for full-time positions are aged fifty-five and older.

100.     There is no legitimate business reason for UMS's no-rehire policy.

**Disparate Treatment of Dr. Hardy**

101.    UMS refused to rehire Dr. Sarah Hardy, then age 65, for employment, because of her age.

102.    When UMS posted a full-time, two-year Interim Provost position at UMF for which Dr. Hardy was qualified, Dr. Hardy applied and was offered a full-time position. Dr. Hardy applied for the position at age sixty-four and agreed to accept the position at age sixty-five. However, due to UMS's policy barring retirees from accepting full-time positions, UMS rescinded the offer and instead offered Dr. Hardy a part-time position and less pay.

103.    The policy was the sole reason that Dr. Hardy was not hired for the posted full-time Interim Provost position.

104.    Dr. Hardy was not hired for the posted full-time Interim Provost position because of her age.

105.    UMS has refused and continues to refuse to rehire other employees who retired from UMS because of their age.

## COUNT I: MHRA DISPARATE IMPACT

106.    Paragraphs 1-105 are incorporated by reference.

107.    UMS's conduct constitutes unlawful age discrimination against Plaintiff in violation of the MHRA. The MHRA ensures that all workers, regardless of their age, should be permitted to compete for jobs equally.

108.    UMS's policy prohibits the rehiring of retired former employees to full-time positions. The policy provides in part that "Retirees cannot be rehired in a full-time regular position anywhere within the University of Maine System. Retirees can be rehired by UMS in a part-time regular, part-time temporary, or full-time temporary position."

109.    UMS's prohibition against rehiring retired former employees to full-time positions impacts only prospective employees who are aged fifty-five and older. UMS Administrative Practice Letter IV-N, effective July 8, 2020, provides that employees are eligible to retire from UMS "at the normal retirement age of 65 or older, or at age 55 or older with at least ten (10) years of continuous regular, full-time equivalent service."

110.    Due to the policy, UMS prohibited Dr. Hardy, then a sixty-five-year-old retiree, from accepting a full-time, two-year position and instead offered less than full-time employment and less pay.

111.    Dr. Hardy is a retired employee prohibited from being rehired for a full-time position by the policy because she accepted a retirement buyout in 2022. When UMS posted a full-time Interim Provost position at UMF for which Dr. Hardy was qualified, Dr. Hardy applied and was offered a full-time position. However, due to the policy, the offer was rescinded, and Dr. Hardy was offered a part-time position instead. The policy was the sole reason that Dr. Hardy was not hired for the posted full-time Interim Provost position.

112.    The effect of the practices complained of above has been to deprive Dr. Sarah Hardy and other employees who retired from UMS of equal employment opportunities and otherwise adversely affect their status as employees or applicants for employment because of their age.

113.    UMS's policy prohibiting the rehire of retirees to full-time positions has a disparate impact upon older employees and therefore violates the MHRA.

114.    Because UMS's policy prohibiting rehiring of retirees is limited to individuals aged fifty-five years and older, and because the sole reason UMS denied Dr. Hardy the full-time

Interim Provost position was because of the retirement policy, the policy has a disparate impact on older employees.

115.    The rehire prohibition deprives a specific group of older employees of employment opportunities. The policy prohibits all retired UMS employees from applying for full-time positions. The fact that non-retired employees and external applicants aged fifty-five and older are eligible for non-temporary positions does not make the policy any less discriminatory.

116.    The MHRA ensures that all employees, regardless of their age, should be permitted to compete for jobs equally. Many former employees who retire or take an early retirement package still need work. The MHRA protects their equal opportunity to apply for new jobs, including within the UMS system.

117.    The policy utilized by UMS was not consistent with business necessity and does not otherwise meet the requirements of the MHRA.

<u>COUNT II: ADEA DISPARATE IMPACT</u>

118.    Paragraphs 1-117 are incorporated by reference.

119.    UMS's policy prohibiting rehiring of retirees to full-time positions disparately impacts older employees and therefore violates the ADEA.

120.    Because by definition UMS retirees are aged fifty-five or older, the policy prohibiting rehire of retirees to non-temporary positions "deprive[s]" a specific group of UMS employees over the age of 40 of employment opportunities with UMS, a practice 29 U.S.C. § 623(a)(2) specifically prohibits.

121.    Dr. Hardy is a UMS retiree who applied for and agreed to accept a two-year Interim Provost position at UMF. Dr. Hardy applied for the position at age sixty-four and agreed

to accept the position at age sixty-five. Citing the policy, UMS then reneged on its agreement and prevented Dr. Hardy from taking the full-time position, and instead offered Dr. Hardy a part-time position and less pay.

122.    The fact that non-retired employees and external applicants aged fifty-five and older are eligible for non-temporary positions does not make the policy any less discriminatory.

123.    No one under age fifty-five was denied rehire based on this policy.

124.    The disparate impact of the policy on older workers was not attributable to a reasonable factor other than age and the policy does not otherwise meet the requirements of the ADEA.

125.    Defendants' conduct constitutes unlawful discrimination against Plaintiff in violation of the ADEA.

126.    Plaintiff seeks declaratory and injunctive relief only against Malloy under the ADEA including but not limited to the non-monetary relief set out in the Prayer for Relief.

<u>COUNT III: MHRA DISPARATE TREATMENT</u>

127.    Paragraphs 1-126 are incorporated by reference.

128.    Defendant refused to hire Dr. Sarah Hardy, then age sixty-five, for employment because of her age, in violation of the MHRA.

129.    UMS has refused and continues to refuse to rehire other employees who retired from UMS because of their age.

130.    Defendant failed to hire Dr. Hardy based on a facially discriminatory policy that prohibits hiring retired employees to full-time positions. The policy provides in part that "Retirees cannot be rehired in a full-time regular position anywhere within the University of

Maine System. Retirees can be rehired by UMS in a part-time regular, part-time temporary, or full-time temporary position."

131.    Retirement status is a proxy for age because retirees as a class are defined by age. UMS Administrative Practice Letter IV-N, effective July 8, 2020, provides that employees are eligible to retire from UMS "at the normal retirement age of 65 or older, or at age 55 or older with at least ten (10) years of continuous regular, full-time equivalent service."

132.    The effect of the policy and practices complained of above has been to deprive Dr. Sarah Hardy and other employees who retired from UMS of equal employment opportunities and otherwise adversely affect their status as employees or applicants for employment because of their age.

133.    The policy mandates disparate treatment based on age and places older employees at a disadvantage when applying for jobs. In doing so, Defendant treats some people less favorably than others because of their protected trait.

134.    Further, Defendant discriminatorily applied the policy prohibiting rehire of retirees. It offered other employees, but not Dr. Hardy, deferral of retirement and full-time employment. Two other UMF faculty members who accepted the SRI, but not Dr. Hardy, were asked to defer their retirement for the academic year and continue full-time employment. Those faculty members continued to receive their base pay, plus the SRI bonus at the end of the academic year.

COUNT IV: ADEA DISPARATE TREATMENT

135.    Paragraphs 1-134 are incorporated by reference.

136.    Defendant engaged in unlawful employment practices on the basis of age, in violation of the ADEA, 29 U.S.C. 621, *et seq*.

137.    UMS refused to rehire Dr. Sarah Hardy, then age 65, for employment, because of her age.

138.    UMS has refused and continues to refuse to rehire other employees who retired from UMS because of their age.

139.    Defendant failed to hire Dr. Hardy based on a facially discriminatory policy that prohibits hiring retired employees to full-time positions. The policy provides in part that "Retirees cannot be rehired in a full-time regular position anywhere within the University of Maine System. Retirees can be rehired by UMS in a part-time regular, part-time temporary, or full-time temporary position."

140.    Retirement status is a proxy for age because retirees as a class are defined by age. UMS Administrative Practice Letter IV-N, effective July 8, 2020, provides that employees are eligible to retire from UMS "at the normal retirement age of 65 or older, or at age 55 or older with at least ten (10) years of continuous regular, full-time equivalent service."

141.    The effect of the policy and practices complained of above has been to deprive Dr. Sarah Hardy and other employees who retired from UMS of equal employment opportunities and otherwise adversely affect their status as employees or applicants for employment because of their age.

142.    The policy mandates disparate treatment based on age and places older employees at a disadvantage when applying for jobs. In doing so, Defendant treats some people less favorably than others because of their protected trait.

143.    Dr. Hardy and all other retirees, who are age 40 or older, are protected by the ADEA from discrimination because of their age.

144.    UMS excludes this class of older workers because of their age from being reemployed by UMS, regardless of their qualifications.

<u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff requests that the Court grant the following relief:

A.    Enter Judgment in Plaintiff's favor on all counts;

B.    Declare Defendants' conduct to be in violation of Plaintiff's rights under the MHRA and ADEA;

C.    Order Defendants to rescind the policy prohibiting rehire of individuals who have retired as full-time employees;

D.    Order Defendants to employ Plaintiff or alternatively award front pay and benefits;

E.    Award lost future earnings to compensate Plaintiff for the diminution in expected earnings caused by Defendants' discrimination;

F.    Award equitable relief for back pay, benefits, and prejudgment interest;

G.    On Counts I and III, award Plaintiff compensatory and punitive damages;

H.    On Counts II and IV, award Plaintiff liquidated damages equal to her lost earnings and benefits;

I.    Award nominal damages;

J.    Award attorneys' fees, including legal expenses, and costs;

K.    Award prejudgment interest on all counts

L.    Permanently enjoin Defendants from engaging in any employment practice which discriminates against employees on the basis of age;

M.     Require that Defendants post a notice at all of their work sites of the verdict and a copy of the Court's order for injunctive relief;

N.     Require that Defendants train all management level employees about the illegality of age discrimination;

O.     Require that Defendants place a document in Plaintiff's personnel file which explains that they unlawfully refused to hire Plaintiff because of age discrimination; and

P.     Grant to Plaintiff such other and further relief as may be just and proper.


Dated at Portland, Maine this 23rd day of December, 2024


/s/ Jeffrey Neil Young
Jeffrey Neil Young, Maine Bar No. 3874

/s/ Margaret M. O'Neil
Margaret M. O'Neil, Maine Bar No. 10705

Attorneys for Plaintiff
Solidarity Law
9 Longmeadow Road
Cumberland Foreside, ME 04110
jyoung@solidarity.law
moneil@solidarity.law

/s/ Chad T. Hansen
Chad T. Hansen, Esq., Maine Bar No. 9489

Attorney for Plaintiff
EMPLOYEE RIGHTS GROUP
92 Exchange Street, 2nd floor
Portland, Maine 04101
Tel (207) 874-0905
Fax (207) 874-0343
chad@employeerightslaw.attorney