UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SARAH HARDY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNIVERSITY OF MAINE SYSTEM )<br>and DANNEL MALLOY, in his official )<br>capacity as Chancellor of the University )<br>Of Maine System, )<br>)<br>Defendants. ) | Case No. 1:24-cv-00452-KFW |

**DEFENDANTS' MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

Defendants University of Maine System ("UMS") and UMS Chancellor Dannel Malloy[1] (collectively "Defendants" or "UMS"), by and through the undersigned counsel, move pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff Sarah Hardy's ("Plaintiff") Complaint (the "Complaint") (ECF No. 1).

Plaintiff's Complaint should be dismissed for a multitude of reasons. First, Plaintiff's claims under the Maine Human Rights Act ("MHRA") (Count I & III)[2] and disparate treatment claim under the Age Discrimination in Employment Act ("ADEA") (Count IV) must be dismissed on sovereign immunity grounds pursuant to the Eleventh Amendment of the U.S. Constitution. Plaintiff's remaining disparate impact claim under the ADEA (Count II) is also infirm in various dispositive respects. Specifically, the Complaint fails to identify a facially neutral employment practice or policy that causes an alleged significant disparity based on one's age and is devoid of

---

[1] Plaintiff's Complaint incorrectly identifies Chancellor Malloy's first name. *See Service Returned Executed* at 1 (ECF No. 8).
[2] Recognizing this eventuality, Plaintiff has already filed a state court complaint asserting her MHRA claims.

FP 54198308.1

any factual allegations showing that the identified policy plausibly caused any significant statistical disparity. Additionally, Plaintiff's ADEA disparate impact claim fails as a matter of law because such claims are only viable as to employees. The policy Plaintiff identifies in her Complaint does not apply to employees and at the time of its alleged adverse impact on Plaintiff, Plaintiff was not a UMS employee. Lastly, while Plaintiff's ADEA disparate impact claim seeks only injunctive and declaratory relief against Chancellor Malloy, in his official capacity as Chancellor of UMS, Plaintiff's factual allegations to do not fit within the narrow confines necessary for the claim to proceed under the *Ex Parte Young* exception and its progeny.

## Factual Background[3]

From 2001 to 2011, UMS employed Plaintiff as a Professor of Mathematics at the University of Maine Farmington ("UMF"). *Compl*. ¶ 17. After working as UMF's Director of Institutional Research for a time, Plaintiff returned to serving as a Professor of Mathematics from September 2013 until her retirement on September 1, 2022. *Id.* ¶¶ 17, 23, 47.

In the Spring of 2022, Plaintiff volunteered to participate in a Special Retirement Incentive ("SRI") offered by UMF to qualified faculty members which provided approximately one year's salary upon retirement. *Id.* ¶ 19. Qualified faculty members included employees who were age sixty-two (62) or older with at least ten (10) years of service, or age sixty (60) or older with at least twenty (20) years of service. *Id.* ¶ 24. At the time UMF offered the SRI, Plaintiff was sixty-four (64) years old. *Id.* ¶ 25.

In late July 2022, UMF posted an opening for an Interim Provost position. *Id.* ¶ 30. In early August, Plaintiff applied for the position and UMF's President, Joseph McDonnell, and the search committee, interviewed Plaintiff shortly thereafter. *Id.* ¶¶ 33-36. On August 31, 2022,

---

[3]   UMS recites only those material, well-pled factual allegations for purposes of this Motion without admitting to their accuracy.

UMF's President, Joseph McDonnell, verbally offered Plaintiff the Interim Provost position; Plaintiff accepted the offer, and President McDonnell informed Plaintiff that he would attempt to finalize the details of her job offer as soon as possible. *Id.* ¶¶ 40, 42. On September 1, 2022, Plaintiff's retirement became effective. *Id.* ¶ 47. Subsequently, President McDonnell sent Plaintiff an email stating Plaintiff would be receiving an appointment letter that required her signature. *Id.* That same day, a UMF Human Resources employee sent Plaintiff an email stating that if Plaintiff accepted the Interim Provost position, she would have to forfeit the SRI, which conflicted with Plaintiff's understanding of how the SRI could work. *Id.* ¶¶ 48-51. After Plaintiff communicated her understanding about the SRI to President McDonnell, President McDonnell worked to try to respond to Plaintiff's concern. *Id.* ¶¶ 51-55, 60. While this issue was being addressed, Plaintiff prepared to assume the Interim Provost position. *Id.* ¶ 61.

On September 14, 2022, President McDonnell met with Plaintiff and explained that his original offer to her for the Interim Provost position would have to modified in light of a UMS policy (the "Policy") that provides as follows:

> Retirees cannot be rehired in a full-time regular position anywhere within the University of Maine System. Retirees can be rehired by UMS in a part-time regular, part-time temporary, or full-time temporary position. Depending on your Social Security retirement age, Social Security may impose an earnings limit on such work, which could affect Social Security payments until you reach your full Social Security retirement age, which is based on your year of birth.

*Id.* ¶¶ 63-65, 67, 69. In response, Plaintiff expressed her view that the Interim Provost position qualified as a full-time temporary position. *Id.* ¶¶ 70-73.

On September 14 and 15, 2022, UMS provided Plaintiff a series of offers for the Interim Provost position that would address the Policy. *Id.* ¶¶ 69, 75-76. After back-and-forth communications between Plaintiff and UMS, UMS presented Plaintiff with a modified offer for the Interim Provost position. *Id.* ¶¶ 77-80. In response, Plaintiff reiterated to UMS her personal

3

view that the Interim Provost position qualified as a full-time temporary position. *Id.* ¶ 84. According to Plaintiff, UMS had previously hired a retired employee for a full-time position despite the existence of the Policy. *Id*. ¶ 85. Plaintiff rejected UMS's modified offer for the Interim Provost position. *Id.* ¶ 86. Plaintiff acknowledges that her issues in this lawsuit arose after she left active employment at UMS. *Id.* ¶ 93.

## **Legal Standard**

UMS seeks dismissal under both F.R. CIV. P. 12(b)(1) and (6). Rule 12(b)(1) is the proper means for challenging a court's subject matter jurisdiction with respect to sovereign immunity. *See Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001). As with a motion brought pursuant to Rule 12(b)(6), the Court "credit[s] the plaintiff's well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). "When faced with a motion to dismiss based on multiple grounds, the First Circuit advises lower courts to consider jurisdictional arguments first." *Griffin v. Univ. of Maine Sys*., No. 2:22-cv-00212-JDL, 2023 WL 5279660, at *3 (D. Me. Aug. 16, 2023) (cleaned up and citation omitted). Nonetheless, the Court may consider the merits of a claim prior to analyzing sovereign immunity considerations. *See id.*

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This requires that the Court ignore legal conclusions and speculative facts and focus on whether the claimant's well-pled factual allegations, with reasonable inferences, state a plausible claim for relief, not merely a conceivable claim for relief. *Griffin*, No. 2:22-cv-00212-JDL, 2023 WL 5279660, at *3.

## Argument

**1. UMS is Immune from Plaintiff's Claims Under the MHRA Pursuant to its Sovereign Immunity**

Plaintiff asserts two (2) claims (Counts I and III) under the MHRA. *Compl.* ¶¶ 106-117, 127-134. Because UMS is an agency of the state of Maine, it is entitled to sovereign immunity pursuant to the Eleventh Amendment. Consequently, Plaintiff cannot assert any state law claims against UMS in this forum. As such, Plaintiff's claims under the MHRA must be dismissed.

States and state entities are generally immune from suit under the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979). Determining whether an entity is entitled to Eleventh Amendment immunity is a two-step process. *See Irizarry-Mora v. Univ. of Puerto Rico*, 647 F.3d 9, 12 (1st Cir. 2011). The first question is whether the state has indicated its intention, explicitly vis-à-vis a statute, or implicitly, through the entity's structure, that the entity should share in the state's sovereign immunity. The Court need only proceed to the second question if there is ambiguity as to the first question. *Id.* at 12-13. Here, there is no question that UMS is public university system and an instrumentality and agency of the state of Maine. *See Compl.* ¶ 16 (acknowledging UMS is a public university system); 20-A M.R.S.A. § 10903. Courts in this district have consistently recognized that UMS has sovereign immunity. *See, e.g., Griffin*, No. 2:22-cv-00212-JDL, 2023 WL 5279660, at *7; *Lockridge v. Univ. of Maine Sys.*, 2009 WL 1106529, at *21 (D. Me. Apr. 23, 2009); *Gomes v. Univ. of Me. Sys.*, 365 F. Supp. 2d 6, 42 (D. Me. 2005); *Tobin v. Univ. of Me. Sys.*, 59 F. Supp. 2d 87 (D. Me. 1999). Consequently, there is no ambiguity as to whether UMS is an arm of the state of Maine, and the Court does not need to evaluate the second question.

Given UMS's Eleventh Amendment immunity, Plaintiff's claims under Maine state law pursuant to the MHRA must be dismissed. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*,

465 U.S. 89, 100, 105-106 (1984); *Lopez v. Massachusetts*, 588 F.3d 69, 73 n.1 (1st Cir. 2009); *Millay v. Maine, Dep't of Lab., Bureau of Rehab., Div. for Blind & Visually Impaired,* No. 1:11-cv-00438-NT, 2012 WL 4481926, at *10 (D. Me. May 16, 2012), *report and recommendation adopted sub nom. Millay v. Maine*, No. 1:11-cv-00438-NT, 2012 WL 4471232 (D. Me. Sept. 26, 2012). Accordingly, the Court should dismiss Plaintiff's claims under the MHRA.

   **2. UMS is Immune From Plaintiff's Claim of Disparate Treatment Under the ADEA Pursuant to its Sovereign Immunity**

Count IV of the Complaint asserts disparate treatment under the ADEA against UMS. *Compl.* ¶¶ 135-144. However, like Plaintiff's MHRA claims, this claim also must be dismissed because the ADEA does not abrogate UMS's sovereign immunity.

As stated above, UMS is entitled to sovereign immunity as an arm of the state of Maine. Plaintiff's ADEA claim asserting disparate treatment against UMS is only viable to extent it validly abrogates UMS's sovereign immunity. In *Kimel v. Florida Board of Regents*, 528 U.S. 62, 82-83 (2000), the U.S. Supreme Court concluded that the ADEA did not validly abrogate states' sovereign immunity. *See also Correa-Ruiz v. Fortuno*, 573 F.3d 1, 5 n.3 (1st Cir. 2009); *Norton v. Univ. of Maine-Orono Physics Dep't*, No. 1:20-cv-00030-JAW, 2020 WL 1321535, at *2 (D. Me. Mar. 20, 2020), *report and recommendation approved*, No. 1:20-cv-030-NT, 2020 WL 2564672 (D. Me. May 19, 2020) (dismissing plaintiff's ADEA claim against the University of Maine due to the ADEA not impugning the University's sovereign immunity). Thus, ADEA claims against UMS and other state agencies are barred. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146, (1993). As a result, Plaintiff's claim under the ADEA (Count IV) must also be dismissed.

3. **Plaintiff Fails to State a Plausible Claim for Disparate Impact Under the ADEA and Fails to Allege Plausible Factual Allegations Necessary to Satisfy the Narrow Exception to UMS's Sovereign Immunity**

   A. <u>Plaintiff Fails to State a Claim for Disparate Impact Under the ADEA Because Plaintiff Fails to Plausibly Allege an Adverse Impact Based on a Neutral Employment Policy or Practice and Fails to Allege Any Supporting Statistical Evidence to Support Her Claim</u>

Plaintiff asserts a claim for disparate impact under the ADEA (Count II) against Chancellor Malloy in his official capacity as Chancellor of UMS. *Compl*. ¶¶ 118-26. Given Plaintiff's own allegations, Plaintiff fails to allege a disparate impact under the ADEA because she does not identify a neutral employment practice or policy that has a significantly disproportionate adverse effect because of one's age, and does not provide specific factual allegations that plausibly demonstrate a significant statistical disparity based on the identified Policy.

Because disparate impact claims do not require evidence of a discriminatory motive, *Prescott v. Higgins*, 538 F.3d 32, 41 (1st Cir. 2008), to plausibly allege a disparate impact claim, a claimant must identify a specific employment practice or policy that is <u>facially neutral</u> in its treatment of different groups but significantly adversely effects one group more than another. *See Smith v. City of Jackson, Miss*., 544 U.S. 228, 239 (2005) (disparate impact claims involve "employment practices that are facially neutral"); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993); *see also Stouffer v. Union R.R. Co., LLC*, 85 F.4th 139, 146 (3d Cir. 2023) ("To establish a *prima facie* case of age discrimination based on disparate impact, a plaintiff must "(1) identify a specific, facially neutral policy, and (2) proffer statistical evidence that the policy caused a significant age-based disparity.").

Here, Plaintiff alleges that UMS's Policy is *facially* discriminatory. *Compl*. ¶¶ 130, 139. Indeed, as part of Plaintiff's allegations supporting her disparate treatment claims, Plaintiff cites the Policy as the <u>sole</u> reason she was not rehired. *Id.* ¶ 103; *see also id.* ¶¶ 127-144. Plaintiff cannot on one hand claim the Policy is facially discriminatory and then at the same time claim the

7

Policy has a disparate impact when the latter requires, by definition, a facially neutral policy. *See Carson v. Lake Cnty., Indiana*, 865 F.3d 526, 536 (7th Cir. 2017) (upholding dismissal of disparate impact claim where "[t]he crux of plaintiffs' claim is that they were the victims of an impermissibly *discriminatory* policy") (emphasis in original). Plaintiff's use of the Policy to buttress her claim of disparate treatment forecloses her disparate impact claim. *See Healey v. Southwood Psychiatric Hosp.*, 78 F.3d 128, 131 (3d Cir. 1996) ("Analysis under disparate impact is not appropriate where plaintiff claims injury based on a facially discriminatory policy"); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 115 (2d Cir. 1992); *Schoenhals v. Dowling Coll.*, No. 215CV2044ADSARL, 2019 WL 1284259, at *6 (E.D.N.Y. Mar. 20, 2019) ("A policy that is written with the *intent* to discriminate cannot form the basis of a disparate impact claim.") (emphasis in original).

Plaintiff's ADEA disparate impact claim also must be dismissed because the Complaint fails to plausibly allege a statistically significant impact resulting from the Policy. While the Complaint asserts in a conclusory fashion that the Policy has adversely affected other individuals, *Compl.* ¶¶ 98, 119-24, it is devoid of any specific factual allegations identifying (1) the number of employees allegedly affected or (2) any information about those employees and how they were impacted by the Policy. Indeed, the only other specific factual allegations contained in the Complaint related to the impact of the Policy on anyone outside of Plaintiff herself is a reference to an instance when UMS allegedly *did not* follow the Policy as to an UMS retiree. *Id* ¶ 85. Although Plaintiff need not necessarily cite a litany of statistical evidence to support a disparate impact claim at this stage of the case, Plaintiff cannot merely assert in a conclusory manner that the Policy has a significant adverse impact on others based on age. *See Stouffer*, 85 F.4th 139, 146 (3d Cir. 2023) (upholding dismissal where plaintiff failed to plausibly allege *factual* allegations

8

demonstrating "statistically significant" impact); *Carson*, 865 F.3d at 536; *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 69 (3d Cir. 2017).  Indeed, the U.S. Supreme Court has consistently concluded that a claim of disparate impact cannot proceed without factual allegations indicating some kind of statistical impact that give rise to an inference of causation causing the alleged disparity.  *See, e.g., Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 543 (2015); *Meacham v. Knolls Atomic Power Lab'y*, 554 U.S. 84, 100 (2008); *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 994-95 (1988).  For these reasons, Count II of Plaintiff's Complaint should be dismissed.

B. <u>Plaintiff's Disparate Impact Claim Under the ADEA Fails Because it is Premised on a Policy That Only Applies to Applicants Seeking to be Re-Hired and Not Employees</u>

Plaintiff's claim for disparate impact under the ADEA also must be dismissed because, per the ADEA's statutory terms, a disparate impact claim is only viable as to claims concerning practices and policies by active employees.

In *Smith v. City of Jackson*, the U.S. Supreme Court recognized disparate impact theories of liability under the ADEA pursuant to 29 U.S.C. § 623(a)(2).  544 U.S. 228, 233 (2005).  Section 623(a)(2) of the ADEA makes it unlawful for an employer "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."  In contrast to 29 U.S.C. § 623(a)(1), § 623(a)(2) only applies to employees.  Indeed, §§ 623(a)(1) and (c)(2) both include an entity's decision to fail or to refuse to hire any individual *or applicant*, which is tellingly absent from § 632(a)(2).  Instead, § 632(a)(2) limits itself to conduct that affects one's "status as an employee."  Given its plain text and statutory structure, two (2) en banc U.S. Courts of Appeals have concluded that a claim of disparate impact under the ADEA is

9

only available to employees. *See Kleber v. CareFusion Corp*., 914 F.3d 480, 483 (7th Cir. 2019); *Villarreal v. R.J. Reynolds Tobacco Co*., 839 F.3d 958, 963 (11th Cir. 2016) ("The plain text of section 4(a)(2) covers discrimination against employees. It does not cover applicants for employment"); *see also Raymond v. Spirit Aerosystems Holdings, Inc.*, 406 F. Supp. 3d 996, 1001-02 (D. Kan. 2019) (dismissing ADEA disparate impact claim by applicants at the motion to dismiss stage). Indeed, when later referencing the group of individuals § 632(a)(2) pertains to, the Supreme Court has specifically referenced employees. *See Meacham*, 554 U.S. at 96 n.13.

Here, as the Complaint recognizes, the applicable Policy pertains to individuals seeking to be rehired at UMS, *i.e*. applicants for employment. *Compl*. ¶¶ 67, 98-99, 108, 133. Logically, to be potentially affected by the Policy, an applicant would need to be seeking to be rehired and would not be an active employee. That is the case alleged here, because at the time the Policy allegedly affected Plaintiff, she was not an active employee of UMS and instead was seeking to be rehired into a new position. *Id.* ¶¶ 47, 61, 93, 110. Thus, while Plaintiff may attempt to allege disparate treatment under the ADEA based on the Policy, she cannot assert a viable claim for disparate impact under the ADEA per its statutory terms as a matter of law. For this reason, as well, Count II of Plaintiff's Complaint must be dismissed.

    C. <u>Plaintiff's Allegations Against Chancellor Malloy in His Official Capacity Do Not Satisfy the *Ex Parte Young* Exception</u>

Assuming *arguendo* that the aforementioned reasons are not dispositive of Plaintiff's ADEA disparate impact claim, Plaintiff's claim also fails because Plaintiff fails to allege any *ongoing* harm, which is needed to fall within the *Ex Parte Young* exception to sovereign immunity for claims against individuals acting in their official capacity as a state official.

*Ex Parte Young* is an exception to Eleventh Amendment immunity pursuant to which state officials may be sued in their official capacities for injunctive relief. *See Mass. ex rel. Powell v.*

*Holmes*, 546 F. Supp. 3d 58, 71 (D. Mass. 2021) (internal alterations omitted). To fit within its narrow confines, a plaintiff must assert an ongoing violation of federal law and cannot seek equitable relief that is retroactive or monetary in nature. *See Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 146; *Doe v. Univ. of Massachusetts, Trustees of Univ. of Massachusetts*, No. CV 23-12077-WGY, 2024 WL 1521758, at *8 (D. Mass. Apr. 9, 2024); *see also, Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 734 (5th Cir. 2020). Recently, the U.S. Courts of Appeals for the First Circuit examined in detail the *Ex Parte Young* paradigm and the difference of continuing liability for a past harm versus an ongoing harm, the former being something that does not satisfy *Ex Parte Young*. *See Cotto v. Campbell*, 126 F.4th 761, 769 (1st Cir. 2025).

In *Cotto*, the plaintiffs asserted that the defendant's continued refusal to return their property was an ongoing violation of their federal rights. *Id.* However, as the Court explained, the harm complained of had already occurred and was in the past even though there were *continuing effects* of that past harm in the present. *Id*. at 770. Here, similarly, Plaintiff is predicating her disparate impact claim under the ADEA on a harm that has already occurred (*i.e.*, the Policy allegedly prohibiting her from being hired into a full-time position in 2022) and that harm is not actively ongoing. *Compl.* ¶¶ 97, 112, 121. The gravamen of Plaintiff's Complaint is that she was denied a position years ago based on the Policy. While the alleged effects of Plaintiff's denial of the position pursuant to the Policy may be continuing, those effects are all related to a past, fixed harm—not a current, ongoing violation. *See Puerto Rico Aqueduct & Sewer Auth.,* 506 U.S. at 146 ("the exception is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past"); *Corn v. Mississippi Dep't of Pub. Safety,* 954 F.3d 268, 276 (5th Cir.), *cert. denied*, 208 L. Ed. 2d 277, 141 S. Ct. 672 (2020) (Plaintiff's alleged unlawful employment termination was not an ongoing

violation of their federal rights).

Accordingly, Plaintiff's request for injunctive and declaratory relief pursuant to *Ex Parte Young* is not tenable and her claim (Count II) must be dismissed for this reason as well.

## **Conclusion**

For these reasons, Defendants respectfully request that this Court grant Defendants' Motion to Dismiss, dismiss Plaintiff's Complaint, with prejudice, and enter judgment in Defendants' favor on these claims and requests.

Dated: March 18, 2025

*/s/ William Wahrer*      */s/ Shiloh Theberge*
William Wahrer, Esq.     Shiloh Theberge, Esq.

Fisher & Phillips LLP
One Monument Square
Suite 201
Portland, ME 04104
207-477-7008
bwahrer@fisherphillips.com
stheberge@fisherphillips.com

Attorneys for Defendants